## Powell v. Commonwealth.

(Decided January 11, 1927.)

### Appeal from Clark Circuit Court.

1. Abduction—Evidence, in Prosecution for Detaining Woman Against Her Will, Held for Jury.—Evidence, in prosecution for detaining a woman against her will, held sufficient to go to jury.

2. Criminal Law—Motion for Continuance so that Defendant's Wife Could be Present, in Prosecution for Detaining Woman Against Her Will, Held Properly Overruled.—In prosecution for detaining a woman against her will, motion for continuance so that defendant's wife could be present at trial to show jury she believed in defendant's innocence held properly overruled.

3. Abduction—Permitting Prosecutrix, in Prosecution for Detaining Woman Against Her Will, to Testify that She Had Lived at Masonic Home Since Age of Five Held Not Error.—In prosecution for detaining a woman against her will, permitting prosecuting witness to testify that she had lived at Masonic Orphans' Home since she was five years of age held not error.

4. Abduction—Where Detained Prosecutrix Claimed that she Had Asked Defendant to Take Her to Mother's Home on Certain Avenue, Permitting Her to Testify that She Had Asked Way there Before Meeting Defendant Held Not Error.—In prosecution for detaining woman against her will, where prosecuting witness claimed that she had asked defendant to take her to her mother's home on Burns avenue, permitting her to testify that before meeting defendant she had inquired how to get to 340 Burns avenue held not error.

5. Criminal Law—Where Detained Prosecutrix Had Stated She was on Way to Visit Sister, Permitting Her to State She Had Received Letter from Sister, Without Producing Letter, Held Not Prejudicial Error.—In prosecution for detaining woman against her will, where prosecuting wintess had testified that she was on her way to visit her sister in certain county, it was not prejudicial error to permit her to testify, without producing letter, that, on morning before she started, she received letter from sister asking her to come.

6.   Criminal Law—Credibility of Detained Prosecutrix was for Jury.—
     In prosecution for detaining woman against her will, credibility
     of prosecuting witness was for jury.

7.   Criminal Law—Verdict of Jury, Based on Sufficient Evidence,
     Cannot be Disturbed.—Verdict of jury, based on sufficient evi-
     dence, if believed by them, cannot be disturbed by reviewing
     court.

C. F. SPENCER and A. F. BYRD for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Powell, complains of a verdict and judg-
ment finding him guilty of detaining a woman against her
will and fixing his punishment at five years in the state
penitentiary. He was a taxi driver in Winchester, and
about forty-two years of age at the time of his conviction.
He made all the trains to get passengers. The prosecu-
trix, Zelma Lewis, was an unmarried girl about seventeen
years of age at the time of the alleged detention. She
had been staying at Berea and had started on a visit to
her sister in Leslie county, traveling by train from Berea
at about 5:30 p. m., and arrived at Winchester about 6:30
p. m., but the train that went to Cripton was scheduled
to leave at 12:20 at night. After she arrived at the depot
at Winchester, she stayed around the waiting room for
a little while and had but little conversation with any one,
so far as the record shows. Her mother resided on Burns
avenue in Winchester, at least worked there, but Zelma
had not notified her mother that she was going to be in
Winchester. About 7:30 in the evening Zelma ap-
proached appellant, Powell, who was in his taxi at the
depot, and asked him if there was any place of amuse-
ment about the town of Winchester to which she could go,
and he told her about the picture show, whereupon she
asked him to take her to the picture show. He consented
and getting her baggage in the taxi he drove her to the
picture show; when she alighted she asked him to keep
her baggage until she came out. About 9 o'clock she
came out of the picture show and found Powell and asked
him to take her to her mother's, so she says, while he
says she asked him to take her to a dance which was
going on at a pavilion out about eight miles on the Mt.
Sterling road. At any rate she entered the taxi and after

traveling a short distance climbed over the back of the front seat to the front seat and sat with the driver. She says she complained that he was not taking her to Burns avenue; he says she never mentioned Burns avenue nor her mother until after they had been out to the dancing pavilion and returned to town. After going to the pavilion, some eight or nine miles in the country, she declined to get out. He says that he told her he must go back to meet another train and that she could get some one at the dance to bring her home, but she declined to get out without him. She admits that he told her that she could come into town with some one else, and that he wanted to return to the depot. At any rate, they came back towards town together and she says as they came back he drove off on a side road, stopped the car, turned out the lights, put his arms around her, kissed her and squeezed her leg, all against her will and consent. Later they came into town and went to a camp meeting, but she did not get out there, and then for the first time, as he says, she asked to go to see her mother. He drove her to Burns avenue, where she got out and went and knocked on a door; receiving the information that her mother was not there and had not been there for some time but had gone to another place not far from Winchester, she returned to the taxi and went with appellant to the depot. Two women at the house where she called, answered. They stated that they did not open the door but pulled back the curtain so that they could see and talk to her. They stated they did not see anything wrong with her and she made no complaint that anything wrong had been done to her. When they reached the depot she got out and went in through the ladies' waiting room. In that room were several ladies waiting for trains. She passed from that room into the gentlemen's waiting room, as she says, to find out about her train. While there she fell in conversation with another stranger and soon went out with him and was later seen getting into a taxi with the stranger and other men for a drive, and while on this trip was again criminally assaulted, so she claims.

Appellant asks a reversal of the judgment (1) because the court erroneously overruled his motion for a directed verdict at the conclusion of the evidence; (2) the court committed error in overruling his motion for a continuance; (3) the court erred in permitting the Commonwealth to prove that the prosecuting witness had lived at the Masonic Home, in Louisville, and erred in

permitting the Commonwealth to prove by her that before she met appellant at the depot she had talked with another man and inquired of him how to get to 340 Burns avenue; and further erred in permititng the Commonwealth to prove that on the morning before she started to Winchester she received a letter from her sister, without producing the letter.

1. While the evidence for the Commonwealth is not altogether satisfactory, it was for the jury to say from the evidence whether appellant was guilty of the crime charged, and we do not think the trial court would have been warranted in directing the jury to find and return a verdict for the defendant in the face of the evidence of the prosecutrix, who said she had been detained against her will and gave the surrounding facts and circumstances.

2. Appellant filed his affidavit for continuance, stating that he desired the presence of his wife at the trial but owing to sickness she was unable to attend, and that she would in all likelihood be able to attend the trial at a subsequent term of the court; that she was standing by him in the trial and believed in his innocence. This motion was overruled by the court, and we think properly so because the wife of appellant could not have testified in his behalf, and he did not state in his affidavit that he wanted to advise with her or needed her assistance in the trial except he desired her presence to show to the jury that she believd in his innocence. This was not a legal ground for continuance although we are not unmindful of the fact that in such a prosecution the presence of the wife sometimes has a telling effect upon the jury.

3. Nor do we think it was error on the part of the trial court to allow the witness, Zelma Lewis, to state that she had lived at the Masonic Orphans' Home in Louisville since she was five years of age, or erred in permitting her to state that before she saw the defendant at the depot she had talked with another man, for it is not shown who the man was or what was said between them except she inquired for 340 Burns avenue. As the witness, Zelma Lewis, had stated that she was on her way to visit her sister in Leslie county, we cannot see how it was prejudicial for her to state that she had received a letter from her sister inviting her to come to see her. This evidence, while not especially pertinent, cannot be said to

have been prejudicial to appellant, for it is quite clear from the evidence that she was on a trip from Berea by Winchester to Cripton, which was in the direction of Leslie county.

While none of the grounds relied upon by appellant for reversal of the judgment appear to be sufficient to warrant the relief sought, the court entertains grave doubt of the propriety of this prosecution, all the facts and circumstances considered. The credibility of the witness, however, was for the jury, and as the evidence of the prosecutrix was sufficient, if believed by the jury, to justify the verdict, it cannot be disturbed upon that ground.

Judgment affirmed.